# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| GUSTAVO GUTIERREZ GUTIERREZ § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 5:19-CV-01475 |
| § | |
| AHR AVIONICS, INC. d/b/a AHR § | |
| AVIATION § | |
| § | |
| Defendant. § | |

## ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Gustavo Gutierrez Gutierrez hereby files his Original Complaint regarding Defendant AHR Avionics, Inc. d/b/a AHR Aviation, and would show the Court as follows:

### I. PARTIES

1. Plaintiff Gustavo Gutierrez Gutierrez is a Mexican citizen with a permanent residence outside of the United States in Mexico.

2. Defendant AHR Avionics, Inc. d/b/a AHR Aviation ("AHR") is a Texas for-profit corporation with its principal place of business at 567 Sandau Road, San Antonio, Texas 78216 and can be served through its registered agent, GlacierCap Management, LLC at 10101 Reunion Place, Suite 1000, San Antonio, Texas 78216.

### II. JURISDICTION AND VENUE

3. This Court has personal jurisdiction over AHR. AHR engaged in business in Texas by contracting with Plaintiff to perform work, and performing work, on Plaintiff's aircraft in San Antonio, Texas.

4. The Western District of Texas, San Antonio Division has diversity jurisdiction in this matter pursuant to 28 U.S.C. § 1332(a)(2) because this dispute is between a citizen of Texas (AHR) and a citizen of Mexico (Plaintiff), and the amount in controversy exceeds $75,000.

5. Venue is proper in this District and Division because AHR resides in San Antonio, Texas. San Antonio, Texas is the judicial district in which a substantial part of the events or omissions giving rise to Plaintiff's claims occurred.

### III. STATEMENT OF FACTS

6. Plaintiff owned and operated a 1999 Raytheon B36TC Bonanza, S/N EA-650 Turboprop Conversion, with FAA Registration N307M ("the Aircraft"). The Aircraft was insured by Plaintiff with Allianz México, S.A. Compañia de Seguros ("Allianz"). The insured sum for the Aircraft's hull under Plaintiff's insurance policy with Allianz was USD $600,000.00, with a USD $60,000.00 deductible.

7. AHR is a FAA Certified Repair Station and Beechcraft Authorized Service Center. Plaintiff entrusted the Aircraft to AHR for AHR to perform modifications, repairs, and maintenance. On or about December 18, 2017, Plaintiff contacted Fred McMillan, AHR's Sales and Customer Service Manager and Chief Inspector, notified him that there were problems with the Aircraft, and requested that AHR work on it. AHR told Plaintiff that it could work on the Aircraft.

8. AHR had previously repaired and maintained the Aircraft at Plaintiff's request. As a result, AHR was familiar with the Aircraft.

   a. On or about June 9, 2017, AHR performed work on the Aircraft's nose gear and fuel indicator, and serviced the landing gear tires.

      b.      On or about September 12 and 13, 2017 AHR performed maintenance work on the Aircraft.  AHR removed and replaced the Aircraft's main landing gear tires and inner tubes, serviced the tires, and serviced and adjusted the brakes.

      c.      On or about October 17, 2017, AHR performed work on the Aircraft.  AHR removed the Aircraft's left and right wheel assemblies, reinstalled them, and performed additional work.

9. When AHR maintained the Aircraft, it certified that "[a]ll maintenance…was performed in accordance with current regulations of the Federal Aviation Administration and was determined to be in an airworthy condition and is approved to return to service for work performed."

10. On December 18, 2017 Plaintiff turned over the Aircraft to AHR's facility at the San Antonio International Airport.

11. On December 19, 2017 AHR performed some repairs on the Aircraft, and informed Plaintiff that once the propeller governor test switch was replaced, the shop would perform an engine compressor wash.

12. On December 20, 2017 at around 8:48 a.m., Plaintiff advised AHR that he would like to pick up the Aircraft at 11:00 a.m. that day.  Mr. McMillan advised him that the Aircraft would be ready.

13. At some point before Plaintiff arrived at the shop, the Aircraft was in an accident at AHR's facility while it was being worked on and tested by AHR's employees.  Mr. McMillan explained to Plaintiff that while AHR was performing an engine test, the Aircraft moved forward

out of control and fell down a slope, causing the nose and right wing of the Aircraft to impact the ground.

14. AHR employees failed to properly (a) set the Aircraft's brakes; (b) chock the Aircraft's wheels; (c) monitor brake pressure; (d) monitor engine power; (e) reduce engine thrust; and (g) otherwise take precautions to ensure that the Aircraft stayed secure while they performed their work. The AHR employees also improperly positioned the Aircraft near an uneven area of the ramp while performing their work. This uneven area was not protected with a fence or any other barrier.

15. Alternatively, AHR failed to properly maintain the Aircraft, including the Aircraft's brakes.

16. As a result of AHR's improper actions and inactions, while AHR was performing its work on the Aircraft, the Aircraft was able to, and did, move forward, ultimately falling down a slope. The Aircraft, including its airframe, engine, and propeller, was severely damaged.

17. The Aircraft was determined to be a total loss. For the total loss of the Aircraft, Allianz paid Plaintiff $540,000.00 under the policy. Allianz deducted the $60,000.00 deductible from the $600,000.00 policy amount.

18. Plaintiff additionally paid $48,669.58 for the transfer, inspection, evaluation, and storage of the remains of the damaged Aircraft.

19. All conditions precedent for bringing this suit have been met.

### IV. CAUSES OF ACTION

**A. BREACH OF CONTRACT**

20. Plaintiff incorporates the facts and allegations set forth in paragraphs 1-19 above.

21. Plaintiff contracted with AHR for AHR to perform modifications, repairs, and maintenance work on the Aircraft.

22. AHR breached its contract with Plaintiff by failing to perform its work on the Aircraft as agreed, and by failing to follow proper procedures and/or standards to prevent the Aircraft from moving and sustaining damage while it was being worked on by AHR's employees.

23. As a result of AHR's failure to perform its obligations under its contract, the Aircraft sustained severe damage and was declared a total loss, and Plaintiff was damaged by having to pay the amount of the insurance policy's deductible plus additional expenses for the transfer, inspection, evaluation, and storage of the remains of the damaged Aircraft.

**B.     NEGLIGENCE**

24. Plaintiff incorporates the facts and allegations set forth in paragraphs 1-19 above.

25. AHR's employees failed to use reasonable care and/or follow the correct procedures and/or standards while they were performing work on the Aircraft.  They failed to secure the Aircraft prior to performing an engine run up and operating it.  AHR owed a duty to Plaintiff to act with reasonable care when performing repairs, maintenance, and testing on the Aircraft.  AHR breached this duty by failing to do so.  Specifically, AHR employees were negligent in failing to properly (a) repair and maintain the Aircraft's brakes; (b) set the Aircraft's brakes; (c) chock the Aircraft's wheels; (d) monitor brake pressure; (e) monitor engine power; (f) reduce engine thrust; and (g) take other precautions to ensure that the Aircraft stayed in secure position while performing their work.  AHR employees negligently positioned the Aircraft near an uneven area of the ramp while working on the engine.  AHR negligently failed to install and

maintain a fence or other effective barrier to prevent the Aircraft from dropping off the ramp's uneven surface and sustaining damage.

26. AHR's negligence proximately caused damage to Plaintiff in the form of the total loss of the Aircraft, with Plaintiff having to pay the amount of the insurance policy's deductible plus additional expenses for the transfer, inspection, evaluation, and storage of the remains of the damaged Aircraft.

C. **BREACH OF BAILMENT AGREEMENT**

27. Plaintiff incorporates the facts and allegations set forth in paragraphs 1-19 above.

28. Plaintiff delivered the Aircraft to AHR in trust for the purposes of having the Aircraft repaired, maintained, and returned to him in an airworthy condition. AHR accepted delivery of the Aircraft with an express or implied contract that the Aircraft would be repaired, maintained, and returned to him in an airworthy condition or in at least as good of a condition as the Aircraft was in when Plaintiff entrusted it to AHR.

29. As a result of AHR's acts and omissions, the Aircraft sustained severe damage and was declared a total loss, and Plaintiff was damaged by having to pay the amount of the insurance policy's deductible plus additional expenses for the transfer, inspection, evaluation, and storage of the remains of the damaged Aircraft.

D. **BREACH OF IMPLIED WARRANTY**

30. Plaintiff incorporates the facts and allegations set forth in paragraphs 1-19 above.

31. AHR performed modification, repair and maintenance services on the Aircraft and sold these services to Plaintiff. AHR failed to provide these services in a good and workmanlike manner. AHR failed to perform its work and testing in accordance with the standards of a mechanic and repair station generally considered proficient by those capable of judging such work. Specifically, prior to conducting an engine run up and performing work, a mechanic and repair

station performing these services in a good and workmanlike manner would have properly (a) positioned the Aircraft on a safe area of the ramp; (b) set the Aircraft's brakes; (c) chocked the Aircraft's wheels; (d) monitored brake pressure; (e) monitored engine power; (f) reduced engine thrust once the Aircraft began moving; and (g) taken precautions to otherwise ensure that the Aircraft was secure and would not move off the ramp or drop from its position while the work was being performed.

32. As a result of AHR's failure to perform modification, repair, and maintenance services on the Aircraft in a good and workmanlike manner, the Aircraft sustained severe damage and was declared a total loss, and Plaintiff was damaged by having to pay the amount of the insurance policy's deductible plus additional expenses for the transfer, inspection, evaluation, and storage of the remains of the damaged Aircraft.

### V. REQUEST FOR RELIEF

33. Plaintiff requests the following relief:

   a. That Defendant be cited to appear and answer;

   b. That upon a final trial, Plaintiff Gutierrez receive a final judgment against AHR for all damages;

   c. That upon a final trial, Plaintiff Gutierrez receive a judgment against AHR for its attorneys' fees;

   d. That Plaintiff Gutierrez be awarded his court costs against AHR;

   e. That Plaintiff Gutierrez recover pre- and post-judgment interest as allowed by law, at the highest rate allowed by law; and

   f. That Plaintiff Gutierrez be awarded such other and further relief to which he is entitled, at law or in equity.

## VI.     JURY DEMAND

34.     Plaintiff hereby demands a trial by jury.

Dated: December 20, 2019                    Respectfully submitted,

                                            By: /s/ *George R. Diaz-Arrastia*
                                                George R. Diaz-Arrastia
                                                State Bar No. 05805600
                                                SCHIRRMEISTER DIAZ-ARRASTIA BREM LLP
                                                Pennzoil Place – South Tower
                                                711 Louisiana Street, Suite 1750
                                                Houston, Texas 77002
                                                Telephone: (713) 221-2500
                                                Facsimile: (713) 221-2525
                                                Email: gdarrastia@sdablaw.com

                                            **ATTORNEY-IN-CHARGE FOR PLAINTIFF
                                            GUSTAVO GUTIERREZ GUTIERREZ**

*Of Counsel:*

Laura Friedl Jones
State Bar No. 00787500
SCHIRRMEISTER DIAZ-ARRASTIA BREM LLP
Pennzoil Place – South Tower
711 Louisiana Street, Suite 1750
Houston, Texas 77002
Telephone: (713) 221-2500
Facsimile: (713) 221-2525
Email: ljones@sdablaw.com